

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| MARY TILMAN,<br><br>RODNEY W. TILMAN,<br><br>TAMMIE L. TILMAN,<br><br>        *Plaintiffs,*<br><br>v.<br><br>CREDITORS INTERCHANGE, LLC,<br><br>CREDITORS INTERCHANGE RECEIVABLE MANAGEMENT, LLC,<br><br>        *Defendant.* | CIVIL ACTION NO. 3:05CV00008<br><br><br>MEMORANDUM OPINION<br><br><br><br><br><br>JUDGE NORMAN K. MOON |

  On February 4, 2005, the Plaintiffs commenced this action by filing a six count Complaint against Creditors InterChange, LLC and Creditors InterChange Receivable Management, LLC (the "Defendant"). Counts I through IV of the Complaint allege various violations of the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. §§ 1692 et seq. Counts V alleges defamation under Virginia law. Count VI alleges intentional infliction of emotional distress under Virginia law. Before the Court now is the Defendant's May 9, 2005 motion in which it moves the Court to dismiss Counts V and VI of the Plaintiffs' complaint, or, in the alternative, for a more definite statement as to those counts and the overall complaint. The Defendant also moves the Court to strike the statutory damages sought by the Plaintiffs in Counts I through IV. For the reasons stated below, the Court will deny the Defendant's motion to

dismiss as to Count V, but grant the motion as to Count VI. The Court will also deny the Defendant's motion for a more definite statement and the motion to strike.

**I. Facts**

This case concerns allegations of improper and abusive debt collection practices engaged in by the Defendant on February 11, 2004 with respect to a debt owed by Rodney Tilman and his wife Tammie Tilman. In 1999, Tammie opened a credit card account with Chase Manhattan Bank. Rodney co-signed on this account. Tammie began having trouble paying off the account in 2003 as a result of financial difficulties and on February 11, 2004 had a total unpaid balance of $3,378.65, with a minimum payment of $1,354.65 due on February 13, 2004. Prior to that date, the account was turned over to the Defendant for collection.

On February 11, 2004, an employee of the Defendant called Rodney's mother, Mary Tilman, and told her that Tammie had not made a payment on her credit card in nearly a year. The employee also told Mary that Rodney, as co-signer of the card, was "up for fraud charges" because of the unpaid balance and that he would swear out a warrant for Rodney's arrest if she did not pay by 2:30 p.m. that day. At this point, Mary became very upset and called the Sheriff to inform him of these threats since Rodney and Tammie were not presently in town. The Sheriff was familiar with Mary's family and Rodney now claims that his reputation has been defamed by the allegations that he had committed fraud. The complaint goes on to describe the turmoil into which the Defendant's threats threw the Plaintiffs. Mary cried, began shaking, and felt despair and devastation at the thought that her son could be arrested. Rodney felt grief stricken and upset at seeing his mother in such a condition. Tammie experienced feelings of embarrassment and humiliation at hearing that others had learned of her unpaid debts. The turmoil also came

2

between Rodney and Tammie, causing them to argue and souring their relationship for several days.

The Plaintiffs now claim that the Defendant's actions not only violated the FDCPA, but also defamed Rodney and Tammie and constituted intentional infliction of emotional distress as to each of the Plaintiffs.

II. Motion to Dismiss

A. Standard of Review

In deciding any motion to dismiss under FED. R. CIV. P. 12(b), a court must construe the plaintiff's pleadings liberally, taking all facts alleged in the complaint as true and resolving all doubts and drawing all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999); Charles Alan Wright and Arthur Miller, Federal Practice and Procedure § 1363 at 463 (West Supp. 2004). A motion to dismiss for failure to state a claim under Rule 12(b)(6) must not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hospital Bldg. Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 746 (1976) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

B. FDCPA Preemption of Common Law Claims

The Defendant argues that the doctrine of conflict preemption bars the Plaintiffs from pursuing state common law claims of defamation and intentional infliction of emotional distress because they stand as an obstacle to the accomplishment and execution of the objectives of the FDCPA. In support of this argument, the Defendant points to *Thrasher v. Cardholder Servs.*, 74 F. Supp. 2d 691, 695 (S.D. Miss. 1999), where the Southern District of Mississippi held that the

3

FDCPA preempted an intentional infliction of emotional distress claim on the grounds that it conflicted with the purposes of the FDCPA.

The preemption provision of the FDCPA, § 1692n, states that:

This title does not annul, alter, or affect, or exempt any person subject to the provisions of this title from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this title, and then only to the extent of the inconsistency. For purposes of this section, a State law is not inconsistent with this title if the protection such law affords any consumer is greater than the protection provided by this title.

15 U.S.C. § 1692n. This provision reflects Congressional intent that the FDCPA be a floor for consumer protection rather than a ceiling, preempting only those state laws that conflict with the FDCPA while permitting those that provide added protection. *Irwin v. Mascott*, 96 F. Supp. 2d 968, 974 (N.D. Cal., 1999)(noting that § 1692n is express statement of Congressional intent to not preempt state law that provides greater protection); *U.S. v. Sullivan*, 1998 WL 223709 (N.D.Tex.1998) (characterizing the FDCPA as a floor, rather than a ceiling, for consumer protection). The Defendant asserts in conclusory fashion that these claims would stand as an obstacle to the aims of the FDCPA, yet it does not explain how they actually hinder these goals. If anything, these claims would only add to the protection enjoyed by consumers, something explicitly permitted by § 1692n. The limited number of cases addressing this issue, with the exception of *Thrasher*,[1] suggest that common law claims such as those presented by the Plaintiffs

---

[1] The analysis in *Thrasher* is unconvincing. First, the court states that the plaintiff's emotional distress claims would serve as an obstacle to the goals of the FDCPA, yet it does not explain why this is the case. 74 F. Supp. 2d at 695. Second, the court concludes in the alternative

4

are not preempted. *See, e.g., Martin v. Lagualt*, 315 F. Supp. 2d 811, 814 (E.D. Va. 2004) (holding that the FDCPA "can in no way be construed to completely preempt state-law causes of action arising from defamation or insulting words"); *Colo. Capital v. Owens*, 227 F.R.D. 181, 191 (E.D.N.Y. 2005) (holding that the FDCPA did not preempt the plaintiff's common law negligence claims). Therefore, because the FDCPA expressly allows state law to provide consumers with greater protection from abusive debt collection practices, the Court finds that the FDCPA does not preempt the Plaintiffs' claims for defamation and intentional infliction of emotional distress.

C. Defamation

The Plaintiffs allege that the Defendant defamed Rodney and Tammie by falsely accusing Rodney of criminal fraud, causing Mary to further publish this accusation to the Sheriff in a subsequent call for help. In response, the Defendant contends that the Plaintiffs' complaint fails to state a claim for defamation because it does not allege loss of reputation and because Mary, not the Defendant, was the one who actually repeated this accusation to others.

In Virginia, a claim of defamation consists of three elements: (1) publication (2) of a defamatory statement (3) made with the requisite intent. *See Food Lion, Inc. v. Melton*, 250 Va. 144, 150 (1995); *Fleming v. Moore*, 221 Va. 884 (1981). Virginia law makes an important distinction between actions for defamation *per se* and actions for other defamatory statements.

---

that an emotional distress claim allows for compensatory damages and is, therefore, preempted because it provides a remedy which is only co-extensive with and not "greater" than federal remedies. *Id.* This, however, misses the point because § 1692n only preempts state law to the extent that it is inconsistent with the terms of the FDCPA. The fact that an additional state remedy is viewed as merely co-extensive with FDCPA remedies and not actually greater than them is irrelevant if it does not actually conflict with the FDCPA.

5

*Fleming*, 221 Va. at 889 n3. Where an action is brought by a private individual for words determined by the court to be actionable *per se*, "compensatory damages for injury to reputation, humiliation, and embarrassment are presumed," *Great Coastal Express, Inc.* v. *Ellington*, 230 Va. 142 (1985), because of the nature of the language used. 1 Michie's Jurisprudence, Libel and Slander § 3. A plaintiff who proves publication of words actionable *per se* has an "acknowledged right to recover compensatory damages *absent any proof of injury* or of the quantum of injury." *Poulston v. Rock*, 251 Va. 254, 262 (1996) (emphasis added). Moreover, a plaintiff alleging defamation *per se* may recover where no injury to reputation is even alleged. *See Great Coastal Express, Inc.*, 230 Va. at 146, 151 (affirming judgment and damages in favor of plaintiff who did not contend injury to reputation, but only embarrassment and humiliation). Defamatory words "which impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished" are actionable *per se*. *Fleming*, 221 Va. at 889.

In light of the above stated law, it is clear that the Plaintiffs have stated a claim for defamation despite the arguments raised by Defendant. The Defendant's first contention is that the Plaintiffs' defamation claim must fail because there is no specific allegation of reputational injury. Yet *Great Coastal Express, Inc.* and *Poulston* make clear that where a plaintiff alleges words that are defamatory *per se*, reputational injury is presumed as a matter of law due to the nature of the defamatory statement. The Court finds that the Defendant's charge that Rodney had committed criminal fraud amounts to defamation *per se*. Although a mere accusation of failure to pay a debt owed would not, absent a suggestion of dishonesty or insolvency, constitute defamation *per se*, *see Weaver v. Beneficial Finance Co., Inc.*, 200 Va. 572 (1959), accusations

6

of criminal fraud stand in a different light. Charges of fraudulent behavior impugn the character and integrity of the accused and tend to imply behavior involving lying, cheating, and stealing, elements common to misdemeanor crimes of moral turpitude. *See, e.g., Newton v. Commonwealth*, 29 Va. App. 433, 448 (Va. Ct. App. 1999). Injury to reputation, therefore, is presumed where the defamatory words involve false charges of criminal fraud, relieving the Plaintiffs of the need to specifically plead this damage. Inquiry into the extent of this reputational loss is best reserved for the determination of damages. *See, e.g., Snyder v. Fatherly*, 158 Va. 335, 351 (Va. 1932) (noting that loss of reputation may be considered in assessing damages).

The Defendant's second defense concerns the element of publication and relies on the fact that its communications were directed solely to Mary. Rodney's character could not have been impugned as far as Mary is concerned, contends the Defendant, and any loss of reputation he may have suffered in the community at large was due only to her intervening and superceding repetition of the Defendant's accusations of criminal behavior. Given the context in which Mary repeated the defamatory words, the Defendant cannot rely on her actions as a defense to the element of publication. It is well settled that the originator of a defamatory statement is liable for its republication by a third party where such republication is a natural or probable consequence of his actions. *Weaver v. Beneficial Finance Co., Inc.*, 199 Va. 196, 199 (1957). The Plaintiffs concede that Mary republished the Defendant's defamatory words, but only because she honestly believed that her son was about to be arrested and she needed to seek help for them. Her quest for help was a reasonable and natural reaction in light of the Defendant's allegations of criminal behavior and threat of imminent arrest. *See Weaver*, 199 Va. at 200 ("[W]here the words declared

7

on are slanderous per se their repetition by others is the natural and probable result of the original slander.") (quoting Newell, Slander and Libel (4th Ed.) § 303). Therefore, the Defendant cannot point to her actions as superceding acts relieving it of liability for the publication of its words.[2]

The Court, therefore, concludes that the Plaintiffs have stated a claim for defamation under Virginia law. As detailed above, the Plaintiffs have alleged publication of a defamatory statement. Furthermore, they allege that the accusation of criminal conduct was false and published for the purpose of compelling Mary to pay Rodney and Tammie's debt, satisfying the requisite intent requirement. *See generally, Gazette, Inc. v. Harris*, 229 Va. 1, 15 (1985). Accordingly, the Defendant's motion to dismiss the Plaintiffs' defamation claim shall be denied.

D. Intentional Infliction of Emotional Distress

In a claim for intentional infliction of emotional distress where the plaintiff alleges no physical injury, his claim must meet four criteria in order to survive: (1) the wrongdoer's conduct is intentional or reckless; (2) the conduct is outrageous and intolerable; (3) the alleged wrongful conduct and the emotional distress are causally connected; and (4) the distress is severe. *Womack*

---

[2]The Plaintiffs contend that Mary's actions in making these words publically known in her quest to secure help for Rodney and Tammie qualify as "compelled self-publication," a theory which could excuse the fact that she, and not the Defendant, was responsible for publishing the defamatory statements to the community at large. Reliance on this theory is misplaced. Virginia has never adopted compelled self-publication and it is unlikely that it would do so. *See, e.g., Cybermotion, Inc. v. Vedcorp, L.C.*, 41 Va. Cir. 348 (Va. Cir. Ct., 1997) (compelled self-publication by the defamed person cannot be a substitute for the requirement that the defendant published the defamatory words to a third person); *Atkins v. Industrial Telecommunications Ass'n*, 660 A.2d 885, 894-895 (D.C. Cir. 1995) (noting that this theory is not widely accepted and that there is no indication that the Virginia Supreme Court would adopt it). Moreover, this theory is not applicable to the facts of this case because Mary is a third party with respect to the defamatory statement, while compelled self-publication concerns communications by the *defamed person* to a third party, not communications from a third party to others. *See Atkins*, 660 A.2d at 894-95.

8

*v. Eldridge*, 215 Va. 338 (1974). Claims for intentional infliction of emotional distress are not favored under Virginia law. *Ruth v. Fletcher*, 237 Va. 366 (1989).

The Defendant first argues that under Virginia law, claims for intentional infliction of emotional distress are impermissibly duplicative when paired with a claim for defamation, since the latter permits recovery of damages for emotional distress. In support of this contention, the Defendant cites *Smith v. Dameron*, 12 Va. Cir. 105 (Va. Cir. Ct. 1987), where the court dismissed as duplicative a claim for intentional infliction of emotional distress that was based solely on a newspaper's allegedly defamatory publication. In that case, the parents of a murdered teenage boy pursued claims for defamation and intentional infliction of emotional distress claim against a newspaper and interviewee based on an article reporting an allegation that the parents had not adequately helped their son cope with his problems. Because the utterance of the defamatory words constituted the actionable conduct in both claims, the court found the claim for intentional infliction of emotional distress to be duplicative and granted demurrer.

Although the instant case involves both a claim for defamation and intentional infliction of emotional distress, the Court finds it distinguishable from *Dameron*. In *Dameron*, the actionable conduct for purposes of intentional infliction of emotional distress was the defamatory publication itself since the claim pursued "damages arising from the publication of the article." *Dameron*, 12 Va. Cir. at 106. Here, however, the actionable conduct in the two claims is different. The Plaintiffs' defamation claim arises from the *publication* of accusations of criminal behavior to third parties and the presumed loss of reputation that accompanies this. Their intentional infliction of emotional distress claim arises not so much from the publication of the defamatory statement to the community at large, but rather from the distress suffered at the

9

prospect of imminent arrest for fraud. The distress alleged to be actionable in a claim of intentional infliction of emotional distress, in other words, does not depend upon the words uttered being defamatory. Thus, the Court finds that the Plaintiffs' claims for defamation and intentional infliction of emotional distress are not duplicative.

The Defendant next argues that, as a matter of law, the Plaintiffs fail to state a claim with respect to the element of outrageous conduct and severe emotional distress. The Plaintiffs, on the other hand, cite *Hatfill v. New York Times Co.*, 2005 U.S. App. LEXIS 15471 (4th Cir. July 28, 2005) for the proposition that their pleadings are sufficient under federal pleading standards and that they need not meet the stricter standards required under Virginia law.

Under modern notice pleading, a complaint need only provide a "'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2), sufficient to 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Hatfill*, 2005 U.S. App. LEXIS 15471, at *17 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The liberal pleading standard of Rule 8, moreover, applies even to claims in diversity cases which are subject to stricter pleading requirements under state law. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002); *Hatfill*, 2005 U.S. App. LEXIS 15471, at *40. In *Hatfill*, therefore, the Fourth Circuit found that the plaintiff had met the pleading standards in Rule 8 when he pled only "severe emotional distress" without any elaboration as to the specific manifestations of such distress, *Hatfill*, 2005 U.S. App. LEXIS at *40, even though such a limited pleading could not withstand demurrer in *Ely v. Whitlock*, 238 Va. 670, 677 (1989), where the Virginia Supreme Court held that merely pleading severe emotional distress was insufficient to establish the fourth criterion. Thus, a claim for intentional infliction of emotional

10

distress, a disfavored action under Virginia law, need not be pled with the degree of specificity required by Virginia courts.

The instant claim for intentional infliction of emotional distress stands on different ground than the one in *Hatfill* because, unlike the claimant there, the Plaintiffs have specifically pled the symptoms of their emotional distress. Thus, in considering this claim on a motion to dismiss, the Court must determine whether the facts pled, taken as true and construed in the Plaintiffs' favor, state a claim under Virginia's substantive law requirements for intentional infliction of emotional distress. The Court, in other words, conducts its analysis along the lines of Virginia's substantive law, not its pleading requirements.

The forms of emotional distress that the Plaintiffs have pled are not actionable under Virginia law. They claim to have suffered severe emotional distress in numerous forms: duress, anxiety, and uncontrollable crying and shaking on Mary's part; embarrassment and humiliation on Tammie's part; sleeplessness, as well as grief and worry on Rodney's part at seeing his mother so upset; and discord between Rodney and Tammie and between Tammie and Mary in response to the Defendant's threats. In order for emotional distress to be actionable, it must be "so severe that no reasonable person could be expected to endure it." *Russo v. White*, 241 Va. 23, 27 (1991). Looking at Virginia precedent, the types of emotional distress pled by the Plaintiffs are very similar to those found to not constitute severe emotional distress as a matter of law in a number of cases. *See, e.g., Russo*, 241 Va. at 28 (allegations of nervousness, sleeplessness, withdrawal, and stress not enough to survive demurrer); *Starks v. McCabe*, 49 Va. Cir. 554, 559 (Va. Cir. Ct., 1998) (severe depression did not constitute severe emotional distress); *Hyatt v. Avco Fin. Servs. Mgmt. Co.*, 2000 U.S. Dist. LEXIS 13645 (E.D. Va., March 2, 2000) (loss of

11

self esteem, depression, and sleep disturbances not enough to be severe emotional distress); *but see Almy v Grisham,* 55 Va. Cir. 401 (Va. Cir. Ct. 2001) (stress, anxiety, sleeplessness, nervousness, and depression were sufficient to establish severe emotional distress where plaintiff sought medical help). The forms of distress pled by Plaintiffs are not so severe that no one could expect to endure them, but rather seem to be the types of reactions that any debtor could expect to experience in response to a debt collector's attempts to collect a debt.

The Plaintiffs also allege that the Defendant's actions, falsely representing that Rodney was subject to arrest and threatening criminal prosecution, was outrageous and intolerable conduct. To be actionable, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Ruth*, 237 Va. at 377. *Harris v. USAA Cas. Ins. Co.*, 37 Va. Cir. 553, 558 (Va. Cir. Ct., 1994), illustrates where a court might draw the line when it comes to false allegations of criminal activity. In that case, the plaintiff alleged that the defendant insurance company knowingly instigated false criminal charges of arson after his house burned down in order to avoid having to pay out his claim. After being acquitted of these felony charges, the insured brought a claim of intentional infliction of emotional distress against the insurance company and its agents. Despite having subjected the plaintiff to a criminal trial in order to avoid having to pay out a claim, the court found the element of outrageous and intolerable conduct to be a close call. *Id.* at 559. While the court ultimately found that this conduct was outrageous and intolerable, *see id.*, the fact that it was a close call in a case where the plaintiff went through the ordeal of a criminal trial is instructive of how narrowly Virginia courts construe the elements of intentional infliction of emotional distress. Since the instant

12

Defendant's comments were limited to accusations of fraud and threatened arrest, it is hard to imagine that a Virginia court would find the Defendant's behavior sufficiently outrageous and intolerable.

Thus, the Court finds that the Plaintiffs have failed to state a claim for intentional infliction of emotional distress and shall dismiss this count.

III. Motion for a More Definite Statement

The Defendant also moves the Court, in the alternative, to order the Plaintiffs to file a more definite statement as to Count V, as well as to the overall complaint. A court should deny a motion for a more definite statement "when the complaint conforms to Rule 8(a) and it is neither so vague nor so ambiguous that the defendant cannot reasonably be required to answer." *Hodgson v. Va. Baptist Hosp.*, 482 F.2d 821, 824 (4th Cir. 1973). The Defendant does not explain how the Plaintiffs' complaint fails to meet the notice pleading requirements of Rule 8 or how it is so vague or ambiguous as to make answering unreasonable. In light of the considerable detail contained in the complaint, the complaint sufficiently puts the Defendant on notice of the claims and allegations made against it. Thus, the Court will deny this motion.

IV. Motion to Strike

The Defendant also moves the Court to strike the Plaintiffs' damage allegations in Counts I through IV. These counts allege that the FDCPA entitles the Plaintiffs to up to $1000 in statutory damages per violation, but as the Defendant points out, the Plaintiffs are entitled to up to only $1000 per proceeding. The Plaintiffs concede this point and move the Court to grant leave to amend their complaint to reflect the fact that they seek only $1000 per plaintiff for the entire proceeding. Leave to amend the pleadings having been granted, the Court shall deny as

moot the Defendant's motion to strike.

V. Conclusion

In conclusion, for the above stated reasons, the Court shall DENY the Defendant's motion to dismiss as to the Plaintiffs' claim for defamation, but GRANT the motion to dismiss as to the claim for intentional infliction of emotional distress. Also, the Court shall DENY the Defendant's Motion for a More Definite Statement and DENY as moot the Motion to Strike.

An appropriate order shall issue.

The Clerk of the Court hereby is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

ENTERED: /s/ Norman K. Moon
United States District Judge

Date: Sept. 12, 2005